Ryan Adair Shannon (Or. Bar No. 155537)
Center for Biological Diversity
2009 NE Alberta St., Suite 207
Portland, OR 97211
Phone: (503) 283-5474 ext. 407
Email: rshannon@biologicaldiversity.org
*Pro Hac Vice*

Brian Segee (Cal. Bar No. 200795)
Center for Biological Diversity
660 S. Figueroa Street, Suite 1000
Los Angeles, CA 90017
Phone: (805) 750-8852
Email: bsegee@biologicaldiversity.org
*Pro Hac Vice*

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
TUCSON DIVISION**

| | |
|---|---|
| Center for Biological Diversity, a non-profit organization, | Case No.: _____ |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| Ryan Zinke, in his official capacity as Secretary of the Interior; U.S. Fish and Wildlife Service, | |
| Defendants. | |

**INTRODUCTION**

1. Plaintiff Center for Biological Diversity ("Center") challenges, pursuant to the Endangered Species Act ("ESA") and the Administrative Procedure Act ("APA"), the U.S. Fish and Wildlife Service's ("FWS") withdrawal of a proposed rule establishing

1  ESA protections for a distinct population segment ("DPS") of the roundtail chub in the lower Colorado River basin (defined as the Colorado River and all of its tributaries south of Glen Canyon Dam) (hereafter, "LCR roundtail chub"). 82 Fed. Reg. 16,981 (Apr. 7, 2017).

2.  LCR roundtail chub (*Gila robusta*) are large minnows endemic to the lower Colorado River basin with slender, silver bodies and forked tail fins. Decimated by habitat degradation, non-native fish introductions, climate change, and other threats, LCR roundtail chub now occupy only a fraction of their historic range.

3.  In 2003, the Center petitioned to list the LCR roundtail chub and another species, the headwater chub (*Gila nigra*), as threatened or endangered under the ESA. Although the ESA generally requires listing of a species to occur within two years from the submission of a petition, FWS delayed more than a decade before finally issuing a proposed rule to protect both fish as threatened species. 80 Fed. Reg. 60,754 (Oct. 7, 2015).

4.  Under FWS policy, a population of a species is considered a DPS when the agency determines that such population is "discrete" (usually through geographic separation) from other populations of the species and that such population is "significant" to the conservation of the species as a whole. FWS applied that policy in the 2015 proposed listing rule, concluding that the LCR roundtail chub comprises a DPS because of its unique genetic lineage, its separation from roundtail chub in the upper Colorado River basin by the Glen Canyon Dam, and because the loss of the species from the lower basin would result in a significant gap in the range of the species.

5.  However, rather than issue a final rule and provide the LCR roundtail chub with the long overdue ESA protections it desperately needs, FWS reversed course and withdrew the proposed rule based on a September 2016 determination by the American Fisheries Society ("AFS") that the roundtail chub, headwater chub, and Gila chub (*Gila intermedia*) (currently listed as endangered under the ESA) should be reclassified and

combined as a single species referred to as the roundtail chub. 82 Fed. Reg. 16,982 (April 7, 2017).

6. In its withdrawal, FWS claims that under the AFS reclassification, the LCR roundtail chub does not meet the definition of a species under the ESA. The withdrawal, however, is bereft of *any* explanation for the agency's reversal from its previous finding in the proposed listing rule that the LCR roundtail chub is a threatened DPS. Contrary to FWS's determination, even under the new, combined species reclassification, the LCR roundtail chub remains a threatened DPS, and continues to face imminent and severe threats. These deficiencies render the withdrawal decision arbitrary and capricious, and in violation of the ESA and APA. In making its withdrawal decision, FWS also unlawfully ignored and failed to respond to comments submitted by the Center and others that addressed these inadequacies in detail.

7. In order to remedy these ESA violations, the Center seeks an order vacating FWS's withdrawal of the proposed rule, and remanding the matter to FWS with instructions to conduct a new status review of the LCR roundtail chub, and at the conclusion of that status review, to issue a new 12-month finding regarding whether the listing of the LCR roundtail chub as an endangered or threatened DPS is warranted, and if such listing is warranted, directing FWS to timely issue a final listing rule.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c) and (g) (action arising under ESA citizen suit provision); 5 U.S.C. § 702 (APA review); and 28 U.S.C. § 1331 (federal question jurisdiction).

9. The Court may grant the relief requested under the ESA, 16 U.S.C. § 1540(g); the APA, 5 U.S.C. §§ 701–706; and 28 U.S.C. §§ 2201 and 2002 (declaratory and injunctive relief).

10. Plaintiff provided sixty (60) days' notice of its intent to file this suit pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g)(2)(C), by letter to Defendants dated May 7, 2018. Defendants have not taken action to remedy their

1  continuing ESA and APA violations by the date of this complaint's filing.  Therefore, an
2  actual controversy exists between the parties under 28 U.S.C. § 2201.

3      11.   The federal government has waived sovereign immunity in this action
4  pursuant to 16 U.S.C. § 1540(g) and 5 U.S.C. § 702.

5      12.   Venue is proper in the United States District Court for the District of
6  Arizona pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e) because a
7  substantial part of the events or omissions giving rise to the Center's claims occurred in
8  this District.  Additionally, the Center resides in Tucson, Arizona.

**PARTIES**

10      13.   Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a non-profit
11  environmental organization dedicated to the protection of native species and their
12  habitats through science, policy, and environmental law.  The Center has more than 1.1
13  million members and on-line activists.

14      14.   The Center's members include individuals who regularly visit natural areas
15  which are occupied by roundtail chub, and seek to observe or study the roundtail chub in
16  its natural habitat.  The Center's members and staff derive recreational, spiritual,
17  professional, scientific, educational, and aesthetic benefit from these activities, and
18  intend to continue to use and enjoy these areas in the future.

19      15.   The Center has a long history of environmental advocacy in relation to the
20  roundtail chub.  The Center submitted its Petition to List the Roundtail and Headwater
21  Chubs as Endangered Species in the Lower Colorado River Basin in order to protect its
22  own and its members' interests in the LCR roundtail chub.

23      16.   The above-described aesthetic, recreational, professional, and other
24  interests of the Center and its members, have been, are being, and will continue to be
25  adversely harmed by Defendants' decision to withdraw the proposed listing rule for the
26  LCR roundtail chub, and this harm would be remedied by a court order vacating that
27  decision.

17. Defendant RYAN ZINKE is the Secretary of the United States Department of the Interior and is the federal official in whom the ESA vests final responsibility for making decisions and promulgating regulations required by and in accordance with the ESA, including listing determinations. Secretary Zinke is sued in his official capacity.

18. Defendant UNITED STATES FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior that is charged with implementing the ESA for the LCR roundtail chub.

## LEGAL BACKGROUND

### I.  Endangered Species Act

19. The ESA, 16 U.S.C. §§ 1531–1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *TVA v. Hill*, 437 U.S. 180 (1978). Its fundamental purposes are "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species . . . ." 16 U.S.C. § 1531(b).

20. ESA section 4 requires that the Secretary protect imperiled species by listing them as either "endangered" or "threatened." *Id.* § 1533(a)(1). The Secretary has delegated its administration of the ESA to FWS. 50 C.F.R. § 402.01(b).

21. The ESA requires FWS to "determine whether any species is an endangered species or a threatened species because of any of the following factors:

> (A) the present or threatened destruction, modification, or curtailment of its habitat or range;
> (B) overutilization for commercial, recreational, scientific, or educational purposes;
> (C) disease or predation;
> (D) the inadequacy of existing regulatory mechanisms; or
> (E) other natural or manmade factors affecting its continued existence.

16 U.S.C. § 1533(a)(1).

22. FWS's listing determinations must be based "solely on the basis of the best scientific and commercial data available." *Id.* 1533(b)(1)(A).

23. A "species" "includes any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16).

24. FWS, along with the National Marine Fisheries Service, published the Policy Regarding the Recognition of Distinct Vertebrate Population Segments. 61 Fed. Reg. 4,722 (Feb. 7, 1996) ("DPS Policy").

25. The DPS Policy requires FWS, when considering whether a population segment is a DPS, to first determine whether a population segment is discrete. A population is discrete if it is markedly separated from other populations of the same taxon as a consequence of physical, physiological, ecological, or behavioral factors.

26. If discrete, FWS must determine whether the population is significant. Whether a population is significant is based on FWS's consideration of whether it persists in an ecological setting that is unusual or unique for the species; evidence that loss of the discrete population segment would result in a significant gap in the range of the species; evidence that the discrete population segment represents the only surviving natural occurrence of a species that may be more abundant elsewhere as an introduced population outside its historical range; or evidence that the discrete population segment differs markedly from other populations of the species in its genetic characteristics.

27. If FWS determines that a population segment is both discrete and significant, then the population segment qualifies as a DPS and meets the ESA's definition of "species." The ESA and the DPS Policy then require FWS to determine whether the DPS is ''endangered" or "threatened."

28. The ESA's conservation measures generally apply only once FWS lists a species as threatened or endangered. For example, section 7 of the ESA requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any listed species or "result in the destruction or adverse modification" of a species' "critical habitat." 16 U.S.C. § 1536(a)(2). Section 9 of the ESA prohibits, among other things, "any person" from intentionally taking listed species, or incidentally taking listed

1  species, without a lawful authorization from FWS.  *Id.* §§ 1538(a)(1)(B), 1539.  Other provisions require FWS to designate "critical habitat" for listed species, *id.* § 1533(a)(3); require FWS to "develop and implement" recovery plans for listed species, *id.* § 1533(f); authorize FWS to acquire land for the protection of listed species, *id.* § 1534; and authorize FWS to make federal funds available to states to assist in FWS's efforts to preserve and protect threatened and endangered species, *id.* § 1535(d).

29.  To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby citizens may petition FWS to list a species as endangered or threatened.  The process includes mandatory, nondiscretionary deadlines that FWS must meet so that species in need of protection receive the ESA's substantive protections in a timely fashion.  The three required findings, described below, are the 90-day finding, the 12-month listing determination (also known as a "12-month finding"), and for species that FWS determines warrant protection, the final listing determination.

30.  Upon receipt of a listing petition, FWS must "to the maximum extent practicable, within 90 days" make an initial finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted."  *Id.* § 1533(b)(3)(A).  If FWS finds that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected and the process ends.

31.  If, on the other hand, as in this case, FWS determines that a petition does present substantial information indicating that listing may be warranted, then the agency must publish that finding and proceed to conduct a full scientific review of the species' status.  *Id.*  This is called a "status review."

32.  Upon completion of this status review, and within twelve (12) months from the date that it receives the petition, FWS must make a listing determination, or 12-month finding, with one of three determinations: (1) listing is "not warranted"; (2) listing is "warranted"; or (3) listing is "warranted but precluded" by other pending proposals for listing species, provided certain circumstances are present.  *Id.* § 1533(b)(3)(B).

33. If FWS's 12-month finding concludes that listing is warranted, the agency must publish notice of the proposed regulation to list the species as endangered or threatened in the Federal Register for public comment. *Id.* § 1533(b)(3)(B)(ii).

34. FWS must generally issue a final listing rule within one year of the warranted finding and proposed listing rule. In limited circumstances, however, FWS may provide "notice that such one-year period is being extended . . . for no more than six months for the purposes of soliciting additional data . . . [regarding a] substantial disagreement regarding the sufficiency or accuracy of the available data relevant to the determination or revision concerned." *Id.* § 1533(b)(6)(A)(i)(III).

35. If the one-year period is extended, and FWS decides to withdraw the regulation, FWS must "publish in the Federal Register … notice of withdrawal of the regulation . . ., together with the finding on which the withdrawal is based." *Id.* § 1533(b)(6)(B)(iii). Such a finding must be made based on a finding that "there is not sufficient evidence to justify the action proposed by the regulation" and is judicially reviewable. *Id.* § 1533(6)(B)(ii).

## II. Administrative Procedure Act

36. The ESA requires that listing decisions must comply with the rulemaking provisions of the APA, which in turn provide general rules governing the issuance of proposed and final regulations by federal agencies. 16 U.S.C. § 1533(b)(4).

37. Fundamental to the APA's procedural framework is the requirement that, absent narrow circumstances, a federal agency publish as a proposal any rule that the agency is considering adopting and allow the public the opportunity to submit written comments on the proposal. 5 U.S.C. § 553.

38. Specifically, the APA provides that all federal agencies must give "general notice" of any "proposed rulemaking" to the public by publication in the Federal Register. *Id.* § 553(b).

39. In addition, "the agency shall give interested persons an opportunity to participate in the rulemaking through submission of written data, views, or arguments

1 with or without opportunity for oral presentation," and, "[a]fter consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose." *Id.* § 553(c).

40. The agency need not address every comment, but must respond in a reasoned manner to those that raise significant issues.

41. An agency must also consider responsible alternatives to its chosen decision and give a reasoned explanation for its rejection of such alternatives.

42. The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." *Id.* § 702.

43. The APA provides that a court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law," *id.* § 706(2)(A), or agency action that is undertaken "without observance of procedure required by law," *id.* § 706(2)(D).

44. An agency's action is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

## FACTUAL BACKGROUND

### I. Roundtail Chub in the Lower Colorado River Basin

45. Roundtail chub, Gila chub, and headwater chub have been recognized as distinct species or subspecies since the 1800s and continued to be recognized as distinct species up until the AFS's recent determination, a determination which continues to be debated by experts. Regardless of taxonomic classification, all three species, both separately or in combination, have experienced significant declines and face similar

1  threats, including competition and predation from nonnative species, and the destruction, degradation and fragmentation of habitat.

46. LCR roundtail chub live between eight to ten years on average, reaching maturity between ages three and five with spawning typically occurring in the late spring.

47. Opportunistic omnivores, LCR roundtail chub occupy the cool to warm waters of rivers, streams, and tributaries in the Salt, Verde, San Carlos, Three Forks, Little Colorado, Gila, and Bill Williams River watersheds.

48. In addition to habitat destruction and alteration, competition and predation from nonnative fish are primary threats to the LCR roundtail chub. The threat of nonnative fish is compounded by the loss of available habitat and the lack of available cover as these factors increase competition and predation.

49. LCR roundtail chub prefer deep pools and eddies with cover from undercut banks, large rocks and large woody debris. Spawning occurs in pools, riffles and runs with slow to moderate flowing water and is stimulated by late winter and spring snowmelt that provides suitable water temperatures. Juvenile and young of the year fish use vegetated, shallow and slow-moving waters. All of these habitat features and LCR roundtail chub themselves are highly sensitive to alteration from a variety of anthropogenic factors, such as water withdrawals, livestock grazing, and drought.

50. Climate change is a new and growing threat to the survival of the LCR roundtail chub, leading to reduced snowmelt and increased drought and water temperatures.

51. LCR roundtail chub have long been threatened by surface water diversion and groundwater pumping for agricultural and residential use with these threats on the increase in recent years.

52. Multiple dams isolate populations of the chub and severely reduce and alter seasonal flows. This in turn favors introduced fish species, such as flathead catfish, red shiner, western mosquitofish, and bass, which prey on and compete with LCR

roundtail chub. The reservoirs created by dams provide further habitat for these introduced fish species.

53. The LCR roundtail chub is also adversely affected by livestock grazing, recreation, urbanization, mining, roads, forestry practices, and wildfires.

54. Due to habitat loss and fragmentation, LCR roundtail chub populations are in most cases small and isolated, making them vulnerable to loss from stochastic events such as drought and wildfire.

55. Ultimately, regardless of whether the Gila chub, headwater chub, and roundtail chub are all considered to be roundtail chub or not, the LCR roundtail chub has been extirpated from large swaths of its historic range and currently is in danger of extinction due primarily to the introduction of nonnative aquatic species, the reduction of habitat, and climate change.

## II. Listing History Of The Gila Chub, Headwater Chub, And LCR Roundtail Chub

### a. Prior Listing History

56. In 1998, the Center petitioned to list the Gila chub as endangered under the ESA. Following several court cases, FWS listed the Gila chub as endangered and designated critical habitat for the species after finding that the species was eliminated from up to 90 percent of its historic habitat and was heavily impacted by nonnative aquatic species and habitat loss and degradation.

57. On April 14, 2003, the Center petitioned to list the LCR roundtail chub and the headwater chub as threatened or endangered species with designation of critical habitat. The Center's petition demonstrated that the LCR roundtail chub qualified as a DPS, and that both the LCR roundtail chub and the headwater chub had experienced severe declines due to habitat loss and degradation, livestock grazing, dams, diversions, groundwater pumping, mining, recreation, human population growth, competition and predation from non-native fish, and inadequate existing laws and regulations.

58. FWS did not provide a timely response to the Center's petition, failing to issue the required 90-day finding as to whether the requested listing may be warranted. On September 20, 2004, the Center filed suit seeking to compel FWS to make the required 90-day finding. *Center for Biological Diversity v. Norton* (D. Ariz. No. 04-cv-496-TUC-CKJ). The Center and FWS subsequently entered into a stipulated settlement agreement under which FWS agreed to submit a 90-day finding to the Federal Register by June 30, 2005.

59. On July 12, 2005, FWS issued a 90-day finding, determining that the Center's petition presented substantial scientific and commercial data indicating that listing the headwater chub and the LCR roundtail chub "may be warranted." 70 Fed. Reg. 39,981.

60. After a status review of the headwater chub and LCR roundtail chub, on May 3, 2006, FWS issued its 12-month finding on the Center's 2003 petition, denying protection for both species. Specifically, FWS determined that listing the headwater chub was "warranted" but precluded by higher-priority listing actions, and that listing the LCR roundtail chub was not warranted, as the lower Colorado River population was found not to constitute a DPS. 71 Fed. Reg. 26,007.

61. The Center filed suit on September 6, 2006, seeking to set aside the 12-month findings. *Center for Biological Diversity v. Kempthorne* (D. Ariz. No. 4:06-cv-00471-TUC-CKJ). The Center and FWS subsequently reached a stipulated settlement agreement under which FWS agreed to conduct a new status review of the LCR roundtail chub, and at the conclusion of that status review, to submit a new 12-month finding to the Federal Register by June 30, 2009.

62. On March 3, 2009, FWS published a notice in the Federal Register that it was initiating a status review and soliciting new information on the Center's 2003 petition to list the LCR roundtail chub. 74 Fed. Reg. 9,205.

63. On July 7, 2009, FWS issued a new 12-month finding. 74 Fed. Reg. 32,352. In that finding, FWS reevaluated its previous determination, and found that the

1 best available science demonstrated that the LCR roundtail chub was discrete, persisted in a ecological setting unique to the taxon, and that the loss of the lower Colorado River basin population of roundtail chub would result in a significant gap in the range of the taxon.  Thus, the LCR roundtail chub constituted a DPS and was a listable entity.

64.  FWS also determined that listing the LCR roundtail chub was warranted, based on findings that the species faces imminent threats, including the present or threatened destruction of its habitat, the impacts of nonnative species, and the inadequacy of existing regulatory mechanisms.  FWS concluded, however, that the listing was precluded by higher priority listing actions.

65.  On July 25, 2011, the Center and FWS reached a stipulated settlement agreement requiring the agency to make overdue decisions pertaining to 757 species, including the headwater chub and the LCR roundtail chub.  *In re Endangered Species Act Section 4 Deadline Litigation* (D.D.C. Case No. 1:10-cv-0577-EGS) (Dkt. No. 42-1).  Under the agreement, FWS was required to issue its listing proposal for the headwater chub and the LCR roundtail chub by 2015.

66.  On October 7, 2015, FWS proposed to list the headwater chub and LCR roundtail chub as threatened.  80 Fed. Reg. 60,754.  In the proposed rule, FWS determined that headwater chub and LCR roundtail chub constituted threatened species due primarily to the present or threatened destruction of their habitat and range, nonnative aquatic species, habitat reduction, and climate change.

67.  In the proposed rule, FWS reaffirmed its previous finding that the LCR roundtail chub constitutes a DPS.  Specifically, FWS again determined that the LCR roundtail chub was discrete from the upper Colorado River basin population of roundtail chub because it was separate historically and continues to be markedly separate today.  FWS concurrently found that the LCR roundtail chub is significant to the species as a whole because the loss of this population would create a significant gap in the species' range and the population demonstrates a marked difference in genetic characteristics from the upper Colorado River basin population of roundtail chub.  Thus, because the

1 LCR roundtail chub was both "discrete" and "significant," it qualified as a DPS and was a listable entity under the ESA. FWS then concluded that the LCR roundtail chub DPS was threatened and at risk of extinction in the foreseeable future.

68. However, on August 15, 2016, rather than finalize the proposed rule and finally provide desperately needed and long overdue ESA protections to the headwater chub and LCR roundtail chub, FWS reopened the comment period on the proposed rule for an additional 30 days and asked for comments regarding the "taxonomic distinctness" of the headwater, Gila, and roundtail chubs. 81 Fed. Reg. 54,018.

69. The Center provided detailed comments in response to the August 15, 2016 extension. These comments emphasized FWS's duty to provide a determination as to whether listing the newly defined, combined LCR roundtail chub—now made up of the previously distinct Gila, headwater, and roundtail chub species—as a threatened or endangered DPS is warranted.

**b.   The U.S. Fish and Wildlife Service's Withdrawal of the Proposed Rule**

70. On April 7, 2017, FWS withdrew the proposed rule based on the pretense that the LCR roundtail chub is not a discrete taxonomic entity and does not meet the definition of a species under the ESA.

71. In doing so, FWS relied solely on AFS's determination that the LCR roundtail chub, headwater chub, and Gila chub are not separate and distinct species, but parts of a single taxonomic species—the roundtail chub. However, AFS's determination in no way called into question FWS's previous determinations regarding the LCR roundtail chub's discreteness from the upper Colorado River basin population or significance to the taxon as a whole.

72. The withdrawal failed to provide a determination as to whether listing the newly defined LCR roundtail chub as a threatened or endangered DPS is warranted, or to acknowledge the Center's comments regarding the FWS's duty to make such determination, as well as the continuing threats to the LCR roundtail chub. In response,

FWS stated merely that such comments were outside the scope of the withdrawal. 82 Fed. Reg. at 16,984.

### III. The Combined Lower Colorado River Basin Population Of Roundtail Chub Is Eligible For ESA Protection

73. AFS determined that Gila, headwater, and LCR roundtail chub constitute one species, the roundtail chub.

74. FWS previously had determined that the LCR roundtail chub was discrete because it was separate from the upper Colorado River basin population of roundtail chub historically and continues to be markedly separate today. The Gila chub and headwater chub only occur in the lower Colorado River basin. As a result, the newly combined LCR roundtail chub remains discrete from the upper Colorado River basin population of roundtail chub.

75. FWS previously determined the LCR roundtail chub is significant to the roundtail chub species as a whole because the loss of the roundtail chub in the lower Colorado River basin would create a significant gap in the range, and eliminate genetic characteristics which are markedly different from those found in the upper Colorado River basin population of roundtail chub. The newly combined LCR roundtail chub still only exists, as the name implies, in the lower Colorado River basin. As a result, the loss of the newly combined LCR roundtail chub would still create a significant gap in the species' range, and the LCR roundtail chub remains significant to the species.

76. Nothing in AFS's determination called into question FWS's previous finding that the LCR roundtail chub is genetically distinct from the upper Colorado River basin population of roundtail chub. Thus, the combined LCR roundtail chub remains discrete and significant.

77. Before they were combined into one species, Gila chub, headwater chub, and LCR roundtail chub were all threatened primarily by competition and predation from nonnative organisms, and habitat degradation, alteration, destruction, and

1  fragmentation. Their taxonomic reclassification into one combined species did nothing
2  to address or mitigate these threats, which still exist with the same force today.

3      78.    Before they were combined into one species, Gila chub, headwater chub,
4  and roundtail chub had all been eliminated from most of their historic range.  Their
5  taxonomic reclassification into one combined species did nothing to mitigate this loss.

6      79.    Regardless of whether the Gila chub, headwater chub, and LCR roundtail
7  chub are all considered to be roundtail chub or not, the LCR roundtail chub qualifies as a
8  DPS, has been eliminated from most of its historic range, and continues to be in danger
9  of extinction due primarily to competition and predation from nonnative organisms, and
10 habitat degradation, alteration, destruction, and fragmentation. Thus, it meets the
11 definition of an "endangered" or "threatened" species, and FWS's withdrawal of the
12 proposed rule establishing "Threatened Species Status for the Headwater Chub and the
13 Roundtail Chub Distinct Population Segment," in the lower Colorado River basin was
14 arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**The Withdrawal of the Proposed Rule Establishing Threatened Species Status for the LCR Roundtail Chub Was Arbitrary and Capricious, in Violation of the ESA and APA**

19     80.    Plaintiff incorporates all preceding paragraphs by reference.

20     81.    FWS's withdrawal of the proposed rule was based on the incorrect
21 assertion that "the entities previously proposed for listing are no longer recognized as
22 species, as defined by the Act."

23     82.    FWS previously found the LCR roundtail chub to be discrete and
24 significant.

25     83.    Combining the LCR roundtail chub, headwater chub, and Gila chub into
26 one species only reinforces the newly classified population's significance while not
27 undermining its discreteness.

28

84. The LCR roundtail chub qualifies as a DPS, meets the ESA's definition of "species," is a listable entity, and is a species that the Center petitioned FWS to list as an endangered species in the lower Colorado River basin.

85. The LCR roundtail chub is threatened by nonnative aquatic species, a lack of sufficient water to support the physical and biological components needed for all life stages and life-history functions, changes in the timing and amount of snowmelt runoff in the spring and precipitation from monsoons in the fall, reduction in hydrologic connectivity within and between streams, the reduction in the length of flowing reaches, climate change, livestock grazing, recreation, urbanization, mining, roads, forestry practices, and wildfires.

86. FWS's withdrawal violated the ESA and APA for various reasons, including but not limited to the following:

  a. ignored the ESA's definition of "species", which includes "any distinct population segment of any species of vertebrate fish";

  b. failed to consider the threats facing the LCR roundtail chub;

  c. failed to properly apply the ESA's listing factors;

  d. failed to adhere to the best available science;

  e. failed to base its withdrawal on a finding that there is "not sufficient evidence" to justify listing the LCR roundtail chub as a DPS;

  f. failed to respond to the Center's petition to list the LCR roundtail chub as a DPS and failed to determine whether the LCR roundtail chub DPS is endangered or threatened.

87. In doing so, Defendants have failed to perform non-discretionary duties and violated the ESA, 16 U.S.C. §§ 1533(a)(1), 1533(b)(1)(A), 1533(b)(6), 1532(16), and have acted arbitrarily and capriciously, in abuse of their discretion, and not in accordance with law.

88. Defendants' violations are subject to judicial review under the ESA, 16 U.S.C. §1540(g)(1)(C), and the APA, 5 U.S.C. §§ 701–706.

**SECOND CLAIM FOR RELIEF**

**The FWS Failed to Adequately Address Comments Before Withdrawing the Proposed Rule Establishing Threatened Species Status for the LCR Roundtail Chub, in Violation of the ESA and APA**

89. Plaintiff incorporates all preceding paragraphs by reference.

90. FWS's withdrawal violated the ESA and APA by failing to meaningfully respond to comments regarding FWS's duty to provide a determination as to whether listing the newly defined, combined LCR roundtail chub—now made up of the previously distinct Gila, headwater, and roundtail chub species—as a threatened or endangered DPS is warranted.

91. In doing so, Defendants failed to perform non-discretionary duties and violated the ESA, 1533(b)(4); violated the APA, 5 U.S.C. § 533; acted arbitrarily and capriciously, abused their discretion, failed to act in accordance with law, and failed to observe the procedures required by law.

92. Defendants' violations are subject to judicial review under the ESA, 16 U.S.C. §1540(g)(1)(C), and the APA, 5 U.S.C. §§ 701–706.

**REQUEST FOR RELIEF**

Wherefore, Plaintiff respectfully request that the Court:

1. Declare that Defendants' withdrawal of the proposed rule establishing "Threatened Species Status for the Headwater Chub and the Roundtail Chub Distinct Population Segment," in the lower Colorado River basin, 82 Fed. Reg. 16,981 (Apr. 7, 2017), was arbitrary, capricious, and in violation of the ESA and its implementing regulations;

2. Declare that Defendants' withdrawal of the proposed rule failed to observe the procedures required by the ESA, its implementing regulations, and the APA;

3. Set aside and vacate FWS's withdrawal of the proposed rule;

4. Order FWS to complete a new status review of the LCR roundtail chub within six months, and, within six additional months from the completion of such status review, issue a new 12-month finding regarding whether the listing of the LCR roundtail

1  chub as an endangered or threatened DPS is warranted.  If such listing is warranted,
2  further order FWS to issue a final rule to list the LCR roundtail chub as endangered or
3  threatened within one additional year;

4     5.    Award the Center reasonable attorneys' fees and costs associated with this
5  action; and

6     6.    Grant the Center such additional relief as the Court may deem just and
7  proper.

Respectfully Submitted this 15th day of August, 2018.

*/s/ Ryan Adair Shannon*
Ryan Adair Shannon (Or. Bar. No. 155537)
Center for Biological Diversity
2009 NE Alberta St., Suite 207
Portland, OR 97211
T: (503) 283-5474 ext. 407
rshannon@biologicaldiversity.org
*Pro Hac Vice*

*/s/ Brian Segee*
Brian Segee (Cal. Bar No. 200795)
Center for Biological Diversity
660 S. Figueroa Street, Suite 1000
Los Angeles, CA 90017
T: (805) 750-8852
bsegee@biologicaldiversity.org
*Pro Hac Vice*

*Attorneys for Plaintiff*